15154

STATE v. SHUMPERT

(11 S. E. (2d), 523)

November, 1939.

*Messrs. R. B. Hildebrand* and *John T. Roddey,* for appellant,

*Mr. W. G. Finley, Solicitor,* for the State,

November 6, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant was convicted upon an indictment which charged him with willfully and unlawfully having in his possession in his place of business, other than a licensed liquor store, alcoholic liquors.

Appellant assigns error because the lower Court overruled his motion for a directed verdict, which was made upon the ground that there was no testimony from which the jury could find the defendant guilty of having alcoholic liquors in his possession in his "place of business."

The indictment was drawn under the provisions of Act 199, Acts of 1939, Act May 20, 41 St. at Large, page 303, 307, the pertinent provisions of which read as follows: "It shall be unlawful for any person, firm or corporation to store or have in possession in his, her, or its place of business other than a licensed liquor store, any alcoholic liquors whatsoever. A place of business shall be, and include, any place where goods, wares, or merchandise are sold or offered for sale, or distributed, and also places of amusement. A place of business shall also include residences and transportation vehicles when sale of any merchandise is made therefrom. A place of business shall also include outbuildings, warehouses and garages, when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, or offered for sale, or distributed therefrom * * *."

The appellant maintained and operated a combined filling station and grocery store, located on U. S. Highway No.

21, near Fort Mill, about 500 yards from the North Carolina line, wherein he carried a general line of merchandise, including wine, beer, soft drinks and sandwiches. His dwelling house is approximately seventy-two feet from the filling station building. At the filling station are two gasoline pumps, and there is a double driveway and a graveled parking area. The parking area is provided and maintained by the appellant for the purpose of providing space for his automobile customers to park while receiving curb service.

The evidence for the State tends to show that the defendant on the night in question went out to the parked cars on the graveled area immediately adjacent to his filling station, then would step over to his house seventy-two feet away, return in a minute, and a car would drive off. After watching him make four such trips in one hour back and forth from the house to the filling station, the officers arrested him on the fifth trip while he was on the parking area and approaching an automobile. He had in his hand a pint bottle of stamped, tax paid liquor. He violently resisted arrest, and attempted to destroy the bottle of liquor. Following the arrest they searched his residence and found another pint of the same brand of whiskey, bearing the same serial number with the exception of the last digit, which showed that it came from the same case. On Thursday night preceding the date of his arrest, the residence of the appellant was searched by the officers, at which time they discovered therein seven cases of assorted liquors, containing 168 pints.

The appellant makes the issue that the pint bottle of liquor found in his possession at the time of his arrest was not "in his place of business." And it is argued that before the defendant could be found guilty of the charge laid in the indictment the evidence must show that he had in his possession alcoholic liquors within the walls of a building or enclosure, and that such building or enclosure must be the defendant's place of business, where goods, wares and merchandise are sold or distributed—that is to say, the State,

according to appellant's contention, must prove in this case that the alcoholic liquor in the possession of the defendant was within the walls of the combination service station and grocery store before he can be held guilty of violating the statute.

In our opinion, the broad provisions of the statute may not be so narrowly construed.

The statute under which the defendant was indicted gives, among several, this definition of a "place of business": "A place of business shall be, and include, any place where goods, wares, or merchandise are sold or offered for sale, or distributed   *   *   *."

The Circuit Judge, in construing the statute, held that "all parts of one's place of business, including rooms, closets, stairs, yard or courts, used in connection with the place of business itself are a part and parcel of a place of business". And the Circuit Judge aptly illustrated this legal position by pointing out that a news stand operated on a street corner for the purpose of selling papers and magazines would be a place of business, although not conducted within the walls of a building.

In this case we think it clear that the parking area provided and maintained by the defendant immediately adjacent to his service station and store, where patrons were invited to stop in their cars for the purpose of receiving "curb service", necessarily constituted a "place of business", and was so used by the appellant. Nor do we think that the definition of a place of business given by the Circuit Judge goes beyond the wording of the statute. Clearly the graveled parking area to which we have referred, was a place maintained for and devoted by the appellant to the conduct of his business. It was there that he invited customers and patrons to park their automobiles for the purpose of being served, just as truly as though their wants were being attended to within the walls of his store or filling station.

The appellant complains that, "It was error to admit the testimony of State's witness, Floyd Allison, with reference

to the trips made by the defendant back and forth from the filling station to the house and that automobiles would drive up before the filling station and blow their horns, and that defendant would go to the house and come back and the automobile would drive away, this testimony being highly prejudicial to the defendant in that it tended to prove that the defendant was committing the offense of illegally selling alcoholic liquor and was not relevant to the charge on which the defendant was being tried."

It is contended that this testimony was designed to prove that the defendant was making illegal sales of alcoholic liquors, which is a separate and distinct offense from that charged in the indictment.

The general rule is that on a prosecution for a particular crime, evidence which shows or tends to show that the accused has committed another crime wholly independent of and unconnected with that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible, for the reason, among others, that it ordinarily does not tend to establish the commission by the accused of the offense charged.

The rule excluding evidence that accused committed other offenses is subject to a number of exceptions and limitations, as where such evidence tends directly or fairly to prove his guilt of the crime charged, or to connect him with it, or to rebut the defensive theory or a special defense, or to establish the absence of mistake or accident, or where the crime charged and the other offense are closely related or connected; and evidence otherwise competent to establish accused's guilt of the crime charged is not inadmissible because it incidentally tends to prove him guilty of another crime. 22 C. J. S., Criminal Law, § 683, page 1089; *State v. Gregory*, 191 S. C., 212, 4 S. E. (2d), 1; *State v. Lyle*, 125 S. C., 406, 118 S. E., 803, 807; 20 Am. Jur., § 310, page 289.

We think the testimony objected to was admissible. This testimony tends directly and fairly to prove defendant's guilt of the crime charged, and comes within the following rule as announced in *State v. Lyle, supra*: "Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime."

It is likewise urged that, "It was error to permit State's witness, F. B. Hood, to testify of a search made of the defendant's premises on Thursday preceding the date on which the defendant was alleged to have had in possession in his place of business alcoholic liquors, said date being October 7, and the search of which State's witness, F. B. Hood, testified having been made on the preceding Thursday, and also permitting witness F. B. Hood to testify that he found in the residence of the defendant on that date a lot of alcoholic liquors, said testimony being highly prejudicial to the defendant and irrelevant to the issue then being tried."

The defendant was arrested with a bottle of whiskey in his hand, just after he had returned from his house. And immediately thereafter the officers found another bottle of whiskey of the same brand and size, and bearing a consecutive serial number, in his residence. The presiding Judge permitted the introduction of evidence tending to show that on Thursday night before the arrest a search of the residence was made and 168 pints of liquor were found therein. The house is 72 feet distant from the service station.

In *State v. Bolin,* 149 S. C., 84, 146 S. E., 695, the defendant was prosecuted for violating the prohibition law. The main charge was that he had in his store about a half-gallon of unlawful alcoholic liquors. The officers who

searched the store and the surrounding premises found whiskey in a cow barn about fifty yards from the defendant's combined store and dwelling. The barn was close to the defendant's garage, and the evidence showed that the fruit jars containing whiskey, found in the barn, were similar to the fruit jar found in the store. The Court held that this testimony was admissible. The facts of that case are very similar to the facts in the case at bar.

Each case will largely fashion its own pattern of relevancy, shaped by the surrounding facts and circumstances. In our opinion, the testimony objected to has a direct bearing on the defendant's course of conduct, and is logically pertinent, as tending to connect him with the commission of the crime charged in the indictment.

In a prosecution for possessing whiskey, it is not error to admit evidence showing, or tending to show, that on other occasions, not too remote, both before and after the date of the offense charged in the accusation, the defendant possessed whiskey. Such evidence is relevant to show intent, motive, knowledge, design or plan, and as showing circumstances corroborative of the evidence relating to the transaction charged in the accusation upon which the defendant is being tried. 22 C. J. S., Criminal Law, § 691n, pages 1152, 1153. And see cases cited in note.

It is next charged that the trial Court erred in permitting the Solicitor to resubmit the bill of indictment to the grand jury for its reconsideration after the grand jury had returned a "No Bill".

The record shows that an indictment was handed to the grand jury bearing the names of three witnesses, and only two of these witnesses had been examined. This indictment was returned, with the endorsement, "No Bill". Whereupon the Court permitted the Solicitor to strike out "No Bill", and resubmit the same indictment to the grand jury, after having added the name of another witness to the indictment. Before retiring to their room, however, the Court asked the grand jury if they desired to be charged again

on the law pertaining to the possession of liquor in a place of business. The jury then requested to be charged again as to what was meant by a "place of business" under the statute, which the trial Judge immediately did. Thereafter the grand jury returned a true bill against the defendant.

It is said in 27 Am. Jur., § 17, page 598: "The power and duty of the grand jury in the investigation of crimes are not exhausted or limited by adverse action taken by it, or by its failure to act in the first instance. The authorities are substantially uniform in support of the view that a grand jury, after voting not to indict and before reporting to the Court, may, on its own motion, reconsider its previous decision and return a true bill. There is less uniformity of opinion where the grand jury has considered the charge and returned the bill *ignoramus* or not found. The majority of the Courts take the view that in such cases the charge may be resubmitted to the same or a subsequent grand jury for reconsideration. But in several jurisdictions it has been held that a new bill must be submitted to the grand jury, on the ground that its return of the former one, 'no true bill', terminated its power to consider that bill."

Perhaps it might have been the better practice for the Solicitor to have drawn a new indictment rather than to resubmit the old one, but we think this is taking a rather technical view; it would be giving heed to the shadow rather than the substance, and it is difficult, if not impossible, to see wherein the defendant suffered any prejudice. To all intents and purposes it was a new indictment. We adopt the view of a majority of the Courts that under the facts and circumstances shown here, no error was committed in resubmitting the indictment to the grand jury.

Finally, it is contended that the Court erred in refusing to allow the defendant to prove that the case against him was dismissed by one of the magistrates of York County who held the preliminary hearing. We think there is no merit in the exception raising this issue. The case against the defendant was tried upon the indictment

returned by the grand jury, and not upon the warrant issued and the testimony taken by the magistrate. The action of the magistrate upon the preliminary hearing could not in any way bind or be conclusive upon the Court of General Sessions. Regardless of the action of the magistrate in discharging the defendant at the preliminary hearing, the grand jury had the power and authority to return an indictment covering the same offense. Proof of the fact that the defendant had been discharged could have no probative effect upon the trial of the issue before the Circuit Court.

All exceptions are overruled. Judgment affirmed.

Mr. Chief Justice Bonham, Messrs. Justices Baker and Stukes and Mr. Acting Associate Justice L. D. Lide concur.